**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| LAUREL FRANCINE GREENSTEIN, ) | No. CV 16-7313-PLA |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION AND ORDER** |
| ) | |
| v. ) | |
| ) | |
| NANCY BERRYHILL, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 28, 2016, seeking review of the Commissioner's[1] denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on October 21, 2016, and November 4, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on August 3, 2017, that addresses their

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born on September 4, 1953. [Administrative Record ("AR") at 140, 142.] She has past relevant work experience as an appointment clerk, a copy writer, and a public relations representative. [AR at 28, 54.]

On November 30, 2012, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that she has been unable to work since December 21, 2009. [AR at 18, 138-41, 142-50.] After her applications were denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 18, 101-02.] A hearing was held on February 18, 2015, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 34-59.] A vocational expert ("VE") also testified. [AR at 54-57.] On March 10, 2015, the ALJ issued a decision concluding that plaintiff was not under a disability from December 21, 2009, the alleged onset date, through March 10, 2015, the date of the decision. [AR at 18-29.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 7-14.] When the Appeals Council denied plaintiff's request for review on July 28, 2016 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 21, 2009, the alleged onset date.[2] [AR at 20.] At step two, the ALJ concluded that plaintiff has the following severe impairments:

> [D]egenerative disc disease of the lumbar and thoracic spine; asthma/chronic obstructive pulmonary disease . . . ; sleep apnea; headaches/temporomandibular

---

[2] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. [AR at 20.]

4

joint dysfunction (TMJ); hypertension; obesity; and mood disorder.
[Id.] He found her alleged gastrointestinal issues to be non-severe. [AR at 21.] He also found that to the extent plaintiff alleged fibromyalgia, the evidence failed to establish this as a medically determinable impairment. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 21.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[4] as follows:

> [Plaintiff is capable of] lifting up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking up to 6 hours in an 8-hour workday, and sitting up to 6 hours in an 8-hour workday, with the following restrictions: no more than occasional climbing and stooping; no concentrated exposure to pulmonary irritants; and no fast-paced production quotas.

[AR at 23.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as an appointment clerk, a copy writer, and a public relations representative. [AR at 28, 54-55.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of December 21, 2009, through March 10, 2015, the date of the decision. [AR at 29.]

/

/

/

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

# V.

# THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) evaluated the severity of plaintiff's lumbar impairment after August 6, 2013; and (2) evaluated plaintiff's subjective symptom testimony after August 2013. [JS at 4.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A. MEDICAL OPINIONS

### 1. Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 862 F.3d 987, 997 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 862 F.3d at 997 (citing Ryan, 528 F.3d at 1198); Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Trevizo, 862 F.3d at 997 (citing Ryan, 528 F.3d at 1198); Carmickle, 533

F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. An ALJ should weigh the physician's opinion according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 862 F.3d at 997; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling ("SSR"[5]) 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (citation omitted).

/

/

---

[5] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

## 2. The ALJ's Assessment of the Medical Records

The ALJ gave "great weight" to the August 6, 2013, opinion of the consultative examiner Soheila Benrazavi, M.D., "who opined that [plaintiff] would be limited to light work with only occasional posturals, and environmental limitations consistent with her history of asthma." [AR at 27-28 (citing AR at 325-32).] Specifically, Dr. Benrazavi found that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk up to six hours per eight-hour workday, and sit for six hours out of an eight-hour workday, "due to her lumbar sciatica/radiculopathy." [AR at 330.] She also found that plaintiff was limited to occasional stooping and climbing, and that her work environment "should be reasonably free of dust, fumes and smoke," due to her history of asthma. [Id.] In arriving at her opinion, Dr. Benrazavi reviewed a September 14, 2012, x-ray of the lumbar spine that showed "minimal anterolisthesis L4-L5 and moderate facet hypertrophy L4-L5-S1 with mild neuroforaminal narrowing," and a September 25, 2012, MRI of the back, which showed "L4-L5 4 mm bilateral intra foraminal L4-L5 disc protrusion and mild spondylosis L4-L5." [AR at 329.] She noted a positive straight leg raising test in the supine position on the right side, tenderness in the right lower lumbar region "with some diminution in range of motion," and "[s]ome sensory impairment" in the right lower extremity, and noted that plaintiff "may have a condition of sciatica that is mild." [AR at 329.] The ALJ gave "great weight" to Dr. Benrazavi's opinion "because she is a board-certified physician with knowledge of the disability program," and she "had the opportunity to review the medical records and personally examine" plaintiff. [AR at 27.] The ALJ also noted that Dr. Benrazavi's opinion was "consistent with the other objective evidence of record." [Id.]

The ALJ gave "partial weight" to the September 30, 2013, opinion of non-examining reviewing physician, C. Friedman, M.D., but "only to the extent that it is consistent with the opinion of Dr. Benrazavi." [Id.] Dr. Friedman found plaintiff capable of light work, "except only occasional use of the right lower extremity for pushing and/or pulling; only occasional postural activities; avoid even moderate exposure to temperature extremes, respiratory irritants and hazards; and avoid concentrated exposure to wetness, humidity, and vibration." [AR at 27 (citing AR at 72).] The ALJ noted that while the evidence shows that plaintiff has "radicular symptoms into the lower right

8

extremity, there is no evidence of muscle weakness or neurological deficits because of this condition," to warrant the pushing/pulling and environmental limitations suggested by Dr. Friedman, and the environmental limitations suggested by Dr. Friedman "are more extreme than the objective evidence suggests."[6] [AR at 28.] Therefore, the ALJ found that Dr. Friedman's opinions are not supported by the record. [AR at 27-28.]

On June 3, 2013, plaintiff was treated at Mission City Community Network, Inc., by Melvin Silverman, M.D., who found that plaintiff was "temporarily unemployable" for three months (through September 3, 2013). [AR at 334-37.] He noted that plaintiff had a previous right jaw dislocation that was still giving her pain, asthma, headaches, a "major mental disorder," and a musculoskeletal condition (nerve impingement at L4-L5) based on a September 22, 2012, MRI. [AR at 334-37.] He suggested that she needed to see an orthopedist, and also seemed to suggest she see someone for treatment of her temporomandibular joint pain ("TMJ"). [AR at 335 ("Needs to see [illegible] temporomandibular joint").] The ALJ gave Dr. Silverman's opinion "little weight," because he "based his opinion on the results of a physical examination that was entirely normal," and because other (unspecified) progress notes from Mission City Community Network demonstrated few, if any, clinical signs of pain that would support "such an extreme restriction," i.e., presumably referring to Dr. Silverman's opinion that plaintiff was "temporarily unemployable." [AR at 28.] The ALJ found, therefore, that the basis for Dr. Silverman's opinion was "unclear" and, "fail[ed] to articulate quantified limitations." [Id.]

On February 25, 2015, Certified Registered Nurse Practitioner Edward Byrne ("CRNP Byrne"), completed a Physical Residual Functional Capacity Questionnaire. [AR at 401-05.] CRNP Byrne stated that plaintiff had been seen at Mission City Community Network every three

---

[6] Dr. Benrazavi found that because of plaintiff's history of asthma, her work environment "should be *reasonably free* of dust, fumes and smoke." [AR at 330 (emphasis added).] This seems to be relatively *consistent* with Dr. Friedman's opinion that plaintiff should avoid "*even moderate* exposure" to "fumes, odors, dusts, gases, poor ventilation, etc." [AR at 72 (emphasis added).] However, despite giving Dr. Benrazavi's opinion "great weight," and this apparent consistency between Dr. Benrazavi's opinion and Dr. Friedman's with respect to pulmonary irritants, the ALJ inexplicably limited plaintiff to "no *concentrated* exposure to pulmonary irritants." [AR at 23.] This RFC limitation, therefore, does not seem to be based on substantial evidence.

9

months since 2013 for her symptoms of bilateral radiculopathy, sciatica, and limited range of motion. [AR at 401; see also AR at 342-78.] He noted that plaintiff experiences nerve pain with muscle spasms in her right leg to her foot and that the clinical findings that support plaintiff's symptoms include limited range of motion and an inability to manage her daily activities. [Id.] He opined that she could sit less than two hours in an eight-hour workday; must get up and walk 3-4 times per hour; needs to be able to shift positions at will from sitting, standing, or walking; needs hourly unscheduled breaks; does not need a cane at this time but as her symptoms increase, she may need one in the future; suffers from situation-specific depression; her pain or other symptoms would frequently interfere with her attention and concentration to even simple tasks; is capable of low-stress jobs (noting that he was interpreting "stress" to be mental, not physical, stress); can never stoop, crouch, or climb ladders; and can rarely twist and climb stairs. [AR at 402-05]. CRNP Byrne noted that plaintiff was waiting for an assessment by Dr. Chen at USC Spinal Center and stated that she has nerve pain on her right side from her sciatica. [AR at 405.] He stated that she will most likely need surgery, physical therapy, and pain management "for at least a year." [Id.] The ALJ gave CRNP Byrne's opinion "little weight" "because, as a nurse practitioner he is not considered an acceptable medical source . . . ." [AR at 28.] He also stated that "[m]ore importantly, his progress notes do not demonstrate the clinical findings that would be commensurate with such extreme limitations." [Id.] Plaintiff contends that the ALJ erred when he discounted CRNP Byrne's opinion and, as a result, did not properly "address the medical record after July 2013."[7] (JS at 6-8, 14-16).

The fact "that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals.'" SSR 06-03p, 2006 WL 2329939, at *5. At the time plaintiff filed her application for benefits, a certified registered nurse practitioner such as CRNP Byrne was not

---

[7] Plaintiff submits that given plaintiff's age (60) "any limitations precluding her skilled past work would warrant a finding of disability." [JS at 8.]

generally considered to be an acceptable medical source[8] (see 20 C.F.R. § 404.1502(a)(7), (8)), and "only 'acceptable medical sources' can [provide] medical opinions [and] only 'acceptable medical sources' can be considered treating sources, whose medical opinions may be entitled to controlling weight." See SSR 06-03p, 2006 WL 2329939, at *2 (citations omitted).

Nevertheless, even under the Administration's prior regulations, evidence from "other medical" sources, that is, lay evidence, can demonstrate the "severity of the individual's impairment(s) and how it affects the individual's ability to function." Id. The Social Security Administration has recognized that with "the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03p, 2006 WL 2329939, at *3. Therefore, according to the Administration, opinions from other medical sources, "who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." Id.

Relevant factors when determining the weight to be given to an "other" medical source include: how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairments[9]; and any other factors that tend to support or refute the opinion. SSR 06-03p, 2006 WL 2329939, at *4; see also 20 C.F.R. § 404.1527(c); see Trevizo, 862 F.3d at 997 (when an ALJ concludes that a treating

---

[8] The Court notes that the Administration has issued new regulations, and for claims that were filed after March 17, 2017, "acceptable medical source" now *includes* a "Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, [or a Licensed Physician Assistant], for impairments within his . . . licensed scope of practice." 20 C.F.R. § 404.1502(a)(7), (8). Because plaintiff's applications for benefits were filed prior to March 17, 2017, this new regulation did not apply at the time the ALJ issued his decision.

[9] A CRNP is a registered nurse "who possesses additional preparation and skills in physical diagnosis, psycho-social assessment, and management of health-illness needs in primary health care, with advanced certification." See http://www.rn.ca.gov/pdfs/ regulations/npr-b-23.pdf.

physician's opinion is not controlling, either because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ must determine the proper weight to give the opinion based on the factors outlined in 20 C.F.R. § 404.1527(c)). Thus, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' *may outweigh* the opinion of an 'acceptable medical source . . . .'" SSR 06-03p, 2006 WL 2329939, at *5 (emphasis added). Plaintiff contends that in rejecting CRNP Byrne's opinion, the ALJ failed to address the relevant factors enumerated in 20 C.F.R. § 404.1527(c). See also

The ALJ in this case did not discuss any of these relevant factors in giving CRNP Byrne's opinion "little weight," and the reasons he gave for discounting his opinion do not withstand scrutiny. The mere fact that CRNP Byrne is a CRNP is not a germane reason to reject his opinion. Rejection on this basis alone "amount[s] to a wholesale dismissal of the testimony of all [such] witnesses as a group and therefore does not qualify as a reason germane to each individual who testified." Smolen v. Chater, 890 F.3d 1273, 1289 (9th Cir. 1996); see also Pelletier v. Berryhill, 2017 WL 3269377, at *5 (C.D. Cal. July 31, 2017) (citation omitted). Indeed, as noted above, it may be appropriate to give more weight to the non-acceptable medical source after considering the relevant factors to consider when determining the weight to give such a source. The ALJ did not discuss any of the relevant factors.[10] Accordingly, this was not a valid reason to discount the opinion of CRNP Byrne.

The ALJ also rejected CRNP Byrne's opinion because the Mission City Community Network, Inc., progress notes did not demonstrate clinical findings consistent with the limitations suggested by CRNP Byrne. A review of the record, however, shows that CRNP Byrne and others at Mission City Community Network, Inc. treated plaintiff every three months between June 2013 and February 2015. [AR at 334-405.] Clinically, the records from Mission City Community Network, Inc. show that the following examinations and/or tests were performed: (1) on

---

[10] The ALJ on remand shall take these factors into consideration when determining the weight to give CRNP Byrne's opinions.

12

September 18, 2013, plaintiff underwent an initial comprehensive physical examination that showed pain from TMJ, wheezing in her lungs, and bilateral sciatica; (2) on September 16, 2013, a pulmonary function test showed abnormal results, which were interpreted as moderate COPD; (3) on September 23, 2013, two x-ray views of plaintiff's lumbar spine showed mild spondylosis of the lumbar spine and spina bifida of S1, mild osteophyte formation throughout the lumbar spine, and preserved intervertebral disc spaces; (4) two chest x-rays on January 29, 2014, showed degenerative joint disease of the thoracic spine; (5) a January 29, 2014, nerve conduction study showed sciatica on the right side; (6) an April 22, 2014, MRI of plaintiff's lumbar spine showed the following: (a) in the T10-T11 disc space: altered marrow signal throughout the T11 vertebral body; a Schmorl's node at the superior endplate of the T10-T11 disc space with approximately 5% reduction in height; subarticular edema in the inferior endplate of T10; and edematous changes in the paraspinal soft tissue; (b) at the L4-L5 disc space: 3 mm diffuse bulging annulus, hypertrophic facets, and ligamentum flavum with minimal lateral and central canal stenosis and no significant foraminal stenosis; (c) at the L3-L4, L2-L3, and L1-L2 disc spaces, no focal abnormality; and (d) normal marrow signal from the remainder of the visualized thoracolumbar and sacral vertebral elements; (7) a September 11, 2014, report from Sasan Yadegar, M.D., a neurological surgeon, who noted that plaintiff's deep tendon reflexes were difficult to obtain in the ankle area, flexion and extension of her lower back causes "minimal discomfort," and plaintiff exhibited pain in her lower calf upon straight leg raising of the lower extremities; Dr. Yadegar recommended plaintiff return to his office upon obtaining "the lumbar spine MRI films"; (8) an October 2, 2014, report from Dr. Yadegar, stating that plaintiff "is not better," and continues to complain of low back and leg pain; Dr. Yadegar noted that the MRI "shows evidence of a T11 old compression fracture with Schmorl's node," and recommended plaintiff continue with pain managment, and would be referred "to a higher level of care at UCLA for review of her MRI and also any other additional suggestions"; and (9) a January 13, 2015, report from Thomas C. Chen, M.D., who noted at the L4-L5 disc space plaintiff "has some foraminal stenosis with some elevation of the L5 nerve roots at that site," and stated a plan to rule out L5 nerve root compression from foraminal stenosis, and recommended an injection at that site; he also noted

that decompression surgery might be a later option but "at this point" he would "treat her conservatively." [AR at 335, 338-40, 355-56, 366-67, 375-78, 395, 396-97, 399.] Based on her sciatica and asthma/COPD, plaintiff was deemed "temporarily unemployable" on June 3, 2013 [AR at 334-36 (Dr. Silverman)]; September 4, 2013 [AR at 368-69 (CRNP Byrne)]; and January 23, 2014. [AR at 360 (CRNP Byrne[11]).]

While inconsistency with treatment notes is a germane reason for rejecting the opinion of a treating provider, that reason must be supported by the evidence. Ghanim, 763 F.3d at 1161. As shown in the detailed discussion above, this reason for discounting CRNP Byrne's opinion -- that it was not supported by CRNP Byrne's progress notes and clinical findings -- was not supported by substantial evidence.

Remand is warranted on this issue.

**B.  SUBJECTIVE SYMPTOM TESTIMONY**

In her applications for benefits, plaintiff alleged disability due to sciatica, a dislocated jaw, insomnia, sleep apnea, depression, chronic asthma, severe headaches, digestive problems, memory problems and high blood pressure. [AR at 23 (citing AR at 168).] At the hearing, she testified that she has lower back pain that shoots down her right leg and causes difficulty focusing; COPD; does not sleep well; jaw pain and headaches once or twice a day lasting about an hour; difficulty sitting and standing and is most comfortable lying down; and that she is homeless and stays in her car or with friends. [AR at 24 (citing hearing testimony).]

The ALJ discounted plaintiff's subjective symptom testimony based on a number of

---

[11] The ALJ discounted the September 4, 2013, and January 23, 2014, treatment notes finding plaintiff temporarily disabled because "the signature and printed name of the individual who completed the form is illegible, and it is unclear whether or not this individual is an acceptable medical source, which obviously renders it less persuasive." [AR at 28 (citing AR at 360, 368).] Both notes, however, also clearly include the license number "14624," which is the number assigned by the California licensing authority to CRNP Byrne, and also include CRNP Byrne's signature (which appears generally the same as the signature at the end of the February 25, 2015, Physical Residual Functional Capacity Questionnaire that the ALJ attributed to CRNP Byrne [AR at 405]). See http://www.rn.ca.gov/online/verify/shtml; see also JS at 6 n.1 (noting that CRNP Byrne's license number is 14624).

reasons: (1) plaintiff's description of fairly limited daily activities "cannot be objectively verified with any reasonable degree of certainty"[12]; (2) even if her "daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [plaintiff's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed" in the decision[13]; (3) the objective clinical findings do not support the extreme limitations she alleges; (4) there is "very little, if any medical treatment between August 2009 and April and May 2010, when [plaintiff] was seen for a handful of chiropractic treatments"; (5) there is "very little, if any, medical treatment for her allegedly disabling medical conditions between April/May 2010 and September 2012"; (6) there is "very little medical treatment in 2013"; (7) there is only one single hospitalization for a depressive episode in November 2010; and (8) plaintiff's treatment has been conservative and routine.

Plaintiff argues that none of the reasons provided by the ALJ for discounting her subjective symptom testimony is clear and convincing, and defendant counters those arguments. Because the matter is being remanded for reconsideration of the medical opinions, and the ALJ on remand as a result must reconsider plaintiff's RFC in light of the record evidence, the ALJ must also reconsider on remand, pursuant to SSR 16-3p,[14] plaintiff's subjective symptom testimony and, based on his reconsideration of plaintiff's RFC, provide specific, clear and convincing reasons for discounting plaintiff's subjective symptom testimony if warranted. See Trevizo, 862 F.3d at 1000

---

[12] This has been found to be a legally insufficient reason to reject a plaintiff's subjective symptom complaints by many courts in this circuit. See Scales v. Colvin, 2017 WL 3021043, at *17 (S.D. Cal. July 14, 2017) (citing cases).

[13] This reason for discounting plaintiff's subjective symptom testimony, like the ALJ's first reason, is legally insufficient. The ALJ "failed to specify what he 'attributes that degree of limitation to' other than plaintiff's medical condition; thus, he provides no support for his adverse credibility finding on this ground." Scales, 2017 WL 3021043, at *17 (citation omitted).

[14] The Ninth Circuit in Trevizo noted that SSR 16-3p, which went into effect on March 28, 2016, "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 862 F.3d at 1000 n.5 (citing SSR 16-3p). Thus, SSR 16-3p shall apply on remand.

n.5; Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter v. Colvin, 806 F.3d 487, 493-94 (9th Cir. 2015) (the ALJ must identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific and legitimate reasons for discounting the opinion of CRNP Byrne, the ALJ on remand shall reassess the medical evidence of record. In assessing the medical opinion evidence of record, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one opinion over any of the others. Second, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, if warranted, the ALJ shall reassess plaintiff's RFC and determine

at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as an appointment clerk, a copy writer, and a public relations representative. If plaintiff is not so capable, the ALJ shall then complete the disability determination as appropriate.

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 17, 2017

*Paul L. Abrams*
_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE